510 So.2d 915 (1987)
HARBOR COURSE CLUB, INC. and Driscoll Properties, a Florida General Partnership, and Walter Driscoll, Appellants,
v.
DEPARTMENT OF COMMUNITY AFFAIRS, Appellee.
HARBOR COURSE CLUB, INC., and Driscoll Properties, a Florida General Partnership, Appellants,
v.
DEPARTMENT OF COMMUNITY AFFAIRS, Appellee.
Nos. 86-1500, 86-2060.
District Court of Appeal of Florida, Third District.
February 24, 1987.
Rehearing Denied August 31, 1987.
Finley, Kumble, Wagner, Heine, Underberg, Manley, Myerson & Casey and Larry A. Stumpf and Christopher J. Greene and David A. Bailey, Miami, for appellants.
Ross Stafford Burnaman and C. Laurence Keesey, Sr. and John M. Carlson, Tallahassee, for appellee.
Before BASKIN, DANIEL S. PEARSON and FERGUSON, JJ.
PER CURIAM.
This is an appeal under the Administrative Procedures Act from final orders of the Florida Department of Community Affairs (DCA) and the Florida Land and Water Adjudicatory Commission (FLAWAC) determining that certain development of the Ocean Reef resort property in Key Largo, Florida  namely, the clearing of a 3.6-acre hammock of mature tropical hardwood for a golf driving range  violated Chapter 380, Florida Statutes, under which the land in question was designated as an area of critical state concern.
The DCA issued a Notice of Violation asserting that the appellants had illegally cleared the subject property. The hearing officer found that the alleged violation had occurred, and his recommended order specified the manner in which the appellants were to restore the site. See § 380.11(2)(c), Fla. Stat. (1985). The DCA's order on appeal adopted the findings of fact and conclusions of law set forth in the recommended order of the hearing officer. The FLAWAC's order adopted the identical findings and conclusions contained in the hearing officer's separate recommended order.[1] The FLAWAC's order was entered upon the DCA's appeal from a development order issued by Monroe County approving the appellants' application for a land clearing permit. See § 380.07, Fla. Stat. (1985).
The hearing officer's recommended orders set forth the issues in these consolidated cases as follows:

*916 "1. Do Driscoll Properties and/or Harbor Course Club, Inc., Respondents, have vested rights to complete the project at issue, a golf driving range?
...
"2. If Respondents do not have vested rights, did the application to clear land for the golf driving range comply with the Provisions of Chapter 380, Florida Statutes, and in particular with the comprehensive plan and land development regulations for the Florida Keys Area of Critical State Concern?
"3. Is the Department of Community Affairs estopped, or otherwise equitably barred, from preventing the completion of this project? ...
"4. Did Driscoll Properties or Harbor Course Club, Inc., violate the provisions of Chapter 380, Florida Statutes?...
"5. Did Monroe County violate Chapter 380, Florida Statutes, by issuing a land clearing permit prior to transmitting the Monroe County Board of County Commissioners Resolution 091-1984 to the Department of Community Affairs, the South Florida Regional Planning Council and the Developer? ...
"6. If there is a violation of Chapter 380, Florida Statutes, what is the proper remedy? ..."
After reciting a number of undisputed facts pertaining to the procedural history of the land clearing applications and activity, and specifically noting that the Key Largo woodrat, whose habitat was the land in question, is listed as an endangered species by both the U.S. Fish and Wildlife Service and the Florida Game and Freshwater Fish Commission, the hearing officer went on to find that:
"18. The subject property consists of approximately 3.6 acres. Harbor Course Club, Inc., seeks to have the subject property developed into a golf driving range for the use of its members.
"19. Harbor Course Club, Inc., is a private membership golf club located within the Ocean Reef Development on North Key Largo. Ocean Reef is a residential development with three eighteen hole golf courses consisting of approximately 4000 acres, half of which is developed and half of which has been dedicated to wilderness.
"20. The subject property as well as the entire Ocean Reef Development is part of an Area of Critical State Concern previously designated on July 1, 1979 under Section 380.0552, Florida Statutes, and subject to Chapters 27F-8 and 27F-9, Florida Administrative Code.

"21. Monroe County has developed a comprehensive plan pursuant to Chapter 163, Florida Statutes, which provides for certain standards and criteria for the issuance of development permits, such as the one applied for in this instance. As it relates to this case, the comprehensive plan is known as the Monroe County Coastal Zone Protection and Conservation Element.
"22. Prior to its clearing, the subject property was a high quality, mature tropical hardwood hammock with a closed canopy approximately thirty feet in height, and represented a unique genealogy not found elsewhere in North America outside of the Everglades. There were also several `protected' or `threatened' tree species on the site such as the paradise tree, red berry stopper and thatched palm, and approximately five active Key Largo woodrat nests. The clearing that has taken place has substantially destroyed the tropical hardwood canopy and removed most of the top soil from the area. One strip of hammock remains at the border of the property as well as several tree clumps, but the strip and clumps are too small and narrow to serve as a habitat. Therefore, the area's use as a habitat for woodrats has been destroyed and their nests can no longer be found on site. Trees such as the torchwood which were previously found on the site and which serve as host plants for endangered or threatened species, such as the Schaus swallowtail butterfly, have also been destroyed. This finding is based on the testimony of Mark Robertson, Dr. Art Weiner who was accepted as an expert in biology and Florida Keys ecology, and Numi Goodyear, an expert in zoology and *917 Keys mammilian [should read "mammalian"].
"23. The subject property was not selectively cleared, but rather was indiscriminately cleared. This has had a scouring effect on the soil. The evidence does not establish that fill material has been deposited on site.
"24. A survey of trees and vegetation on the subject property was submitted by the applicants, but this was not a complete or adequate survey of vegetation on the site.
"25. The applicants had no adequate protective plan for the endangered or threatened species, such as the woodrat, and trees on the subject property.
"26. Although it was established through the testimony of Melvin R. `Chick' Harbert, who was recognized as an expert in golf facility components, that a golf practice area is an integral part of Professional Golfer's Association approved courses, and that such areas allow golfers to warm up, practice and receive golfing lessons, it has not been established by competent substantial evidence that driving ranges, such as the one applied for in this case, are customarily associated with golf courses such as the ones in Ocean Reef. There is no evidence that professional golf tournaments have, or will be, held at these courses, or that the owners of the courses intend to seek P.G.A. sanctioning of a tournament at their facility. Additionally, Harbert admitted that not every golf course requires a driving range. Finally, Harbert's involvement with the Ocean Reef Development as a professional golf instructor diminishes his credibility as a witness.
"27. Even if it had been found that driving ranges are customarily associated with golf courses such as the ones in this case, the testimony of Charles C. Gardner, a partner in Driscoll Properties, and Charles Pattison, Director of Planning, Building and Zoning for Monroe County, establishes that a golf driving range was not shown or located on the subject property on the Master Development Plan Map for the Ocean Reef Development filed with the County in June, 1977. Further, other than the permit from which the appeal in this case was taken, there are no records, maps, authorizations or permits on file with the County which allow or indicate a driving range on the subject property. Therefore, the applicants had no interest in the development of a driving range at this location prior to its designation as an Area of Critical State Concern. To the contrary, Gardner specifically testified that the desire to locate a driving range on the subject property did not arise until 1982 or 1983.
"28. Although Permit No. C-14914 was transmitted to [the DCA]'s Keys Office on May 14, 1984, Monroe County Resolution No. 091-1984 and the development order authorizing issuance of the permit for land clearing were not transmitted to [the DCA] until June 21, 1984. On August 3, 1984, [the DCA] filed its appeal with the Land and Water Adjudicatory Commission of Resolution No. 091-1984.
"29. Bob Dennis, [the DCA]'s environmental specialist, attended the March 23, 1984 meeting of the Monroe County Board of County Commissioners when Resolution 091-1984 was adopted. He did not participate in the meeting, but simply observed the meeting as part of his normal job duties."
The hearing officer's conclusions of law followed:
"The Division of Administrative Hearings has jurisdiction over the subject matter and parties in this case. Section 120.57(1), Florida Statutes. The [DCA] is the state planning agency authorized to appeal local government development orders in any area of critical state concern to the Land and Water Adjudicatory Commission. Section 380.07, Florida Statutes. As the state land planning agency, the [DCA] also has jurisdiction to enforce and administer the provisions of Chapter 380, Florida Statutes, and rules adopted thereunder. The Respondents Harbor Course Club, Inc. and Driscoll Properties have the burden of proof *918 in this de novo proceeding since they are seeking a permit to clear land in Monroe County, or in the alternative are seeking an exemption from such permitting requirements. Sections 380.07 and 120.57(1), Florida Statutes; Transgulf Pipeline v. Board of County Commissioners of Gadsden County, 438 So.2d 876 (Fla. 1st DCA 1983) [, rev. denied, 449 So.2d 264 (Fla. 1984)]; Florida Department of Transportation v. J.W.C. Co., Inc., 396 So.2d 778 (Fla. 1st DCA 1981).
"The property involved in this case, which is the subject of the application for a permit to develop a golf driving range, is located in that portion of Monroe County designated as an Area of Critical State Concern. Section 380.0552, Florida Statutes. As such it is subject to Chapters 27F-8 and 27F-9, Florida Administrative Code, as well as the comprehensive plan developed by Monroe County pursuant to Chapter 163, Florida Statutes. Sections 163.3161(5) and 163.3194(1), Florida Statutes, provide that Monroe County may not permit development except in conformity with such plan. The comprehensive plan is also required by Section 380.05(4), Florida Statutes, to be in conformity with Chapter 27F-8, Florida Administrative Code. The applicant must prove that its permit application conforms to the above-cited provisions if it is to be granted, unless the applicant's right to develop this driving range vested prior to the County's designation as an Area of Critical State Concern, and it is therefore exempt from such permitting requirements.
"Respondents Harbor Course and Driscoll Properties base their contention that vesting occurred on the following provisions:
"380.05 Areas of Critical State Concern. 
* * * * * *
"(18) Neither the designation of an area of critical state concern nor the adoption of any regulations for such an area shall in any way limit or modify the rights of any person to complete any development that has been authorized by registration of a subdivision ..., by recordation pursuant to local subdivision plat law, or by a building permit or other authorization to commence development on which there has been reliance and a change of position. ... If a developer has by his actions in reliance on prior regulations obtained vested or other legal rights that in law would have prevented a local government from changing those regulations in a way adverse to his interests, nothing in this chapter authorizes any governmental agency to abridge those rights. (Emphasis supplied).
"Section 380.04 Definition of development. 
* * * * * *
"(4) `Development,' as designated in an ordinance, rule, or development permit includes all other development customarily associated with it unless otherwise specified... . (Emphasis supplied)
"The law in Florida is clear that vested rights may be established if a developer has (1) substantially changed his position, (2) in good faith reliance (3) upon some act or omission of government, which would make it highly inequitable to interfere with the acquired right. Dade County v. United Resources, 374 So.2d 1046 at 1050 (Fla. 3rd DCA 1979). It is also clear that the documentation of vested rights or governmental authorization must be clear, complete and specific, and that one agency's actions cannot form the basis of a claim of vested rights against another agency. State v. Oyster Bay Estates, Inc., 384 So.2d 891 (Fla. 1st DCA 1980); City of Miami Beach v. 8701 Collins Avenue, 77 So.2d 428 (Fla. 1955).
"While the evidence does establish that Respondents filed their Master Development Plan Map for the Ocean Reef Development with Monroe County in June, 1977, the evidence is also clear that the plan did not specifically include the driving range here in issue. In fact, the idea *919 of a driving range on this subject property did not arise until 1982 or 1983. Therefore, Respondents could not, and did not, establish that they in any way relied on the filing of this Master Development Plan Map in 1977 to establish their vested right to develop a driving range on this subject property.
"In the alternative, Respondents argue that a driving range is `customarily associated' with the kind of development depicted on its plan, and therefore while not specifically shown, it was nevertheless impliedly included in its plan. This contention, however, has not been supported by competent substantial evidence, and has been found to be without merit. In addition, to interpret Section 380.04(4), supra, to include all activities of any kind that are found in similar kinds of projects, whether or not such activities are specifically delineated, reviewed and authorized, would allow activities that had not been specifically planned and reviewed at the time Area of Critical State Concern regulations were enacted, to avoid any review and approval required by Chapter 380. In this case it would allow Respondents to claim that approval of the Ocean Reef Club Master Development Plan Map in 1977 included authorization to develop a variety of activities not included on the plan map, and not even thought of by Respondents until 1982 or 1983. Distinguish Compass Lake Hills Development Corp. v. State, 379 So.2d 376 (Fla. 1st DCA 1980). Therefore, Respondents have not established that they had a vested right to develop a driving range on this subject property which preceded the location's designation as an Area of Critical State Concern.
"We now turn to the question of whether Respondents have established that their permit application complied with Chapter 380, Florida Statutes, and with the comprehensive plan and land development regulations for the Florida Keys Area of Critical State Concern. Based upon the evidence presented it is concluded that Respondents have not met their burden of proof on this issue. The clearing of the subject property for a golf driving range, which has already taken place, has resulted in the total elimination of topsoil and the hardwood hammock. Tree species listed as threatened or endangered have been destroyed, and the former hammock area has ceased to function as a home for woodrats. A plan for relocation of trees and wildlife species has not been followed. Respondents['] actions have failed to comply with Rule 27F-9.08, Florida Administrative Code, which adopts Chapter 18 of the Monroe County Code dealing with tropical hardwood hammock protection, and have also failed to comply with Rule 27F-9.03, Florida Administrative Code, which adopts and incorporates Monroe County's Coastal Zone Conservation and Protection Element of the Monroe County Comprehensive Plan. Their indiscriminate clearing is incompatible with the tropical hardwood hammock and wildlife habitat that were present on the site.
"Finally, Respondents' argument that [the DCA] is estopped, or otherwise equitably barred from preventing completion of this project, is without merit based upon the facts of this case. Respondents urge that [the DCA] be barred or estopped because its employee, Bob Dennis, was present at the Monroe County Board of County Commissioners meeting on March 23, 1984 when Resolution 091-1984 was adopted. However, it has not been established that Dennis' attendance was for anything other than to observe the meeting, or that he in any way waived, or had the authority to waive official transmittal of this Resolution from the County to [the DCA]. Transmittal did not occur until June 21, 1984, and this appeal was timely filed on August 3, 1984. Receipt of a copy of Permit No. C-14914 in [the DCA]'s Keys Office on May 14, 1984 does not constitute transmittal of the development order authorizing the issuance of this permit, and Section 380.07(2), as construed in Fox v. South Florida Regional Planning Council, 327 So.2d 56 (Fla. 1st DCA 1976) [, cert. denied, 336 So.2d 1181 (Fla. 1976)], allows forty-five days from transmittal of the development order for appeal to the Land and Water Adjudicatory *920 Commission. Respondents have totally failed to establish any basis upon which [the DCA] should be barred or equitably estopped from maintaining this action. State Department of Revenue v. Anderson, 403 So.2d 397 (Fla. 1981)."
Thereafter, the hearing officer recommended to the FLAWAC
"that a Final Order be issued denying Respondents Harbor Course Club, Inc. and Driscoll Properties' application for a land clearing permit. Since the clearing has already taken place, there are no changes in the development proposal that would make it eligible for a permit, and it is therefore also recommended that further development permits for the site in question comply with final action to be taken in [the related DCA case]."
To the DCA, the hearing officer recommended that it:
"issue a Final Order directing Respondent Monroe County to revoke ab initio Permit No. C-14919, and directing Respondents Harbor Course Club, Inc., Walter Driscoll and Driscoll Properties to restore the subject site as follows, within a reasonable period of time:
"a) Restore elevation and soil conditions to that which existed prior to the indiscriminate clearing, using only `clean' soil uncontaminated by seed of exotic plant species,
"b) Revegetate the disturbed site with species that existed prior to the clearing,
"c) Maintain the area to avoid colonization of exotic vegetation, and
"d) Avoid disturbing adjacent areas while undertaking the above restoration activities."
Over the appellants' exceptions, the agencies adopted the findings, conclusions, and recommendations of the hearing officer. We are not persuaded by any of the appellants' arguments that we should disturb the agencies' actions. Accordingly, the orders under review are
Affirmed.
NOTES
[1] Although the orders are in all material respects identical, the hearing officer entered separate orders because separate final agency action was required by both the DCA and FLAWAC.