866 So.2d 707 (2003)
MONROE COUNTY, a Political Subdivision of the State of Florida, and the Department of Community Affairs and Islamorada, Village of Islands, a municipal corporation, Appellants,
v.
Thora AMBROSE, et al., Appellees.
Nos. 3D02-1716, 3D02-1754, 3D02-1800, 3D02-2068.
District Court of Appeal of Florida, Third District.
December 10, 2003.
Rehearing and Rehearing Denied February 18, 2004.
*708 Morgan and Hendrick, P.A., and Karen K. Cabanas (Key West), for appellant, Monroe County.
David L. Jordan, Deputy General Counsel (Tallahassee), for appellant, Department of Community Affairs.
Weiss Serota Helfman Pastoriza & Guedes, P.A., Edward G. Guedes, and Nina L. Boniske, for appellants, Islamorada, Village of Islands.
Brion Blackwelder, Richard Grosso, and David Cozad (Fort Lauderdale), for appellants/intervenors, Protect Key West, d/b/a "Last Stand", et al.
Janet E. Bowman (Tallahassee), for 1000 Friends of Florida, Inc., as Amicus Curiae, for appellants.
*709 James S. Mattson (Key Largo); Andrew M. Tobin (Tavernier); for appellees.
Frank A. Shepherd, for Pacific Legal Foundation, as Amicus Curiae for appellees.
Before LEVY[*], GERSTEN, and GODERICH, JJ.
Rehearing and Rehearing En Banc Denied February 18, 2004.
PER CURIAM.
In the proceedings below, the trial court granted summary judgment in favor of Thora Ambrose, et. al. ("Landowners"), finding that Section 380.05(18), Florida Statutes (1997),[1] created a vested right for the Landowners to complete development of single-family homes on their land. Monroe County, the Department of Community Affairs, and the Village of Islamorada (hereinafter collectively referred to as "Monroe County") appeal the trial court's order granting summary judgment. The Landowners cross-appeal the same order. We reverse and remand with instructions.
The Landowners own parcels of undeveloped land that were platted and recorded in Monroe County between April 24, 1924 and June 27, 1971. During this time, local subdivision plat law governed the development of land. In 1979, the Florida Legislature enacted Section 380.0552 and designated Monroe County as an area of critical state concern.[2] Since then, the local government has approved new land development regulations for these areas.[3] The Landowners assert that these subsequent land regulations have limited or modified their rights to develop their parcels of land.
In 1997, the Landowners filed a complaint seeking declaratory relief to determine their rights pursuant to Chapter 380, Florida Statutes, and to determine the effect, if any, of the 1986 Land Development Regulations, the Rate of Growth Ordinance ("ROGO") and the 2010 Comprehensive Plan. Monroe County and the Landowners filed cross motions for summary judgment. The trial court granted summary judgment in favor of the Landowners.
The trial court found that pursuant to Section 380.05(18), Florida Statutes (1997), the Landowners have vested rights to build single family homes, by virtue of recording their parcels of land. The trial court also determined that the Landowners did not have to show a reliance or change of position and that their rights were vested solely on the recordation of their land. The trial court held that these vested rights are superior to and preempt any of the State of Florida and local governments' *710 comprehensive plans and land use regulations. Finally, the trial court determined that the Landowners' rights to develop their land became vested on July 1, 1972, the enactment date of Section 380.05(18). For the following reasons, we reverse the order granting summary judgment and remand for further proceedings.
The trial court interpreted Section 380.05(18) to find that the Landowners have vested rights to develop their property pursuant to the recordation of their parcels of land. Section 380.05(18) provides that:
Neither the designation of an area of critical state concern nor the adoption of any regulations for such an area shall in any way limit or modify the rights of any person to complete any development that has been authorized by registration of a subdivision pursuant to chapter 498 or former chapter 478, by recordation pursuant to local subdivision plat law, or by a building permit or other authorization to commence development on which there has been a reliance and a change of position, and which registration or recordation was accomplished, or which permit or authorization was issued, prior to approval under subsection (6), or the adoption under subsection (8), of land development regulations for the area of critical state concern. If a developer has by his or her actions in reliance on prior regulations obtained vested or other legal rights that in law would have prevented a local government from changing those regulations in a way adverse to the developer's interests, nothing in this chapter authorizes any governmental agency to abridge those rights.
The plain language of the statute clearly illustrates that if a landowner recorded his property pursuant to local subdivision plat law, his rights to complete any development cannot be limited or modified by the designation of the land as an area of critical state concern nor by the adoption of subsequent land regulations. Although, the trial court's order is clearly in accord with this provision in the statute, the court determined that the Landowners did not have to show a reliance or change of position and that their rights were vested solely on the recordation of their land. We disagree. Recordation alone is not sufficient to establish vested rights.
Florida common law provides that vested rights may be established if a property owner or developer has (1) in good faith reliance, (2) upon some act or omission of government, (3) made such a substantial change in position or has incurred such extensive obligations and expenses (4) that it would make it highly inequitable to interfere with the acquired right. See Hollywood Beach Hotel Co. v. City of Hollywood, 329 So.2d 10 (Fla.1976); Sakolsky v. City of Coral Gables, 151 So.2d 433 (Fla.1963); Equity Res., Inc. v. County of Leon, 643 So.2d 1112 (Fla. 1st DCA 1994); Harbor Course Club, Inc., v. Dep't of Cmty. Affairs, 510 So.2d 915 (Fla. 3d DCA 1987); Dade County v. United Res., Inc., 374 So.2d 1046 (Fla. 3d DCA 1979). The only exception to this common law rule under Chapter 380 is specifically provided for in the statute. See § 380.06(20), Fla. Stat. (1997).[4] The Landowners do not fall under this exception.
*711 The theory behind vested rights is that "a citizen is entitled to rely on the assurances and commitments of a zoning authority and if he does, the zoning authority is bound by its representations." Town of Largo v. Imperial Homes Corp., 309 So.2d 571, 573 (Fla. 2d DCA 1975). However, the mere purchase of land without more does not create a right to rely on existing zoning. See City of Miami Beach v. 8701 Collins Ave., Inc., 77 So.2d 428 (Fla.1954). It would be unconscionable to allow the Landowners to ignore evolving and existing land use regulations under circumstances when they have not taken any steps in furtherance of developing their land.
Pursuant to Section 380.05(18), the Landowners rights to develop their land are not limited or modified by the designation of an area of critical state concern nor the adoption of regulations if they recorded their property prior to the approval of land development regulations for the area. Monroe Country was designated an area of critical state concern in 1979, but the first land use regulations were not enacted until 1986. If the Landowners did not start development prior to the enactment of these land regulations, they acted at their own peril in relying on the absence of zoning ordinances. See Pasco County v. Tampa Dev. Corp., 364 So.2d 850 (Fla. 2d DCA 1978) (existence of present right to use a particular use of land derived from less restrictive zoning or no zoning ordinance at all is not a sufficient act of government upon which to base equitable estoppel to preclude enforcement of subsequently adopted zoning restrictions); see also § 380.05(16), Fla. Stat. (1997). A subjective expectation that land can be developed is no more than an expectancy and does not translate into a vested right to develop the property. See Namon v. Dep't of Envtl. Regulation, 558 So.2d 504 (Fla. 3d DCA 1990).
Furthermore, the purpose of Chapter 380 is to protect the natural resources and environment of the state, preserve water resources, and facilitate orderly and well planned development. See Compass Lake Hills Dev. Corp. v. Dep't of Cmty. Affairs, 379 So.2d 376 (Fla. 1st DCA 1980); § 380.0552, Fla. Stat. (1997). The reason Monroe County was designated an area of critical state concern was to provide for an increased state role in decisions which have a statewide impact. See § 380.021, Fla. Stat. (1997). Allowing Landowners who have not taken any steps to develop their property to obtain vested rights would be contrary to legislative intent. The result would clearly subvert significant legislation and regulations designed and enacted for the purpose of preserving our most precious lands.
Therefore, we conclude that the Landowners must show they relied on Section 380.05(18), and changed their position in furtherance of developing their land, in *712 order to have vested rights to develop their property. See Equity Res. Inc. v. County of Leon, 643 So.2d 1112 (Fla. 1st DCA 1994)(vested rights were established based on acts of reliance where property was purchased under contract contingent on rezoning). We are unable to determine if the Landowners' rights are vested because the trial court's determination rested solely on the Landowner's recordation of property and did not address the reliance issue. Therefore, we remand this matter back to the trial court to determine, based on the foregoing analysis, whether these Landowners have vested rights.
We also conclude that the subsequently enacted land regulations do not apply to the Landowners who are determined to have vested rights. See Town of Largo v. Imperial Homes Corp., 309 So.2d at 573 (town enjoined from enforcing new zoning requirements where it was determined that developer had vested rights). Those Landowners who do not have vested rights, however, will be subject to the subsequently enacted land regulations. See Harbor Course Club, 510 So.2d at 918 (development of property as a golf driving range violated Section 380.05 as property owners' rights had not vested prior to designation of the land as an area of critical state concern).
To the extent that these regulations render any of the Landowners' property practically useless, the Landowners are entitled to compensation. Section 380.08, Florida Statutes (1997), provides that the government cannot adopt a rule or regulation that constitutes a taking without providing full compensation.[5]See Joint Ventures v. Dep't of Transp., 563 So.2d 622 (Fla.1990)(state must pay when it regulates private property in such a manner that the regulation deprives the owner of the economically viable use of that property).
Based on the foregoing analysis, it is unnecessary to address the other points raised on appeal. With regard to the cross-appeal, the Landowners argue that the trial court incorrectly calculated the cut-off date for determining their vested rights under Section 380.05(18). The trial court concluded that July 1, 1972 was the date that the parcels of land became vested because on that date Section 380.05(18) was enacted. The Landowners allege that September 15, 1986 is the correct cut-off date for determining their vested rights, and Monroe County concedes that the Landowners are correct on this point. We agree.
Section 380.05(18) provides vested rights for Landowners who recorded their property prior to the approval of land development regulations for the area of critical state concern. The first land development regulations for Monroe County were enacted on September 15, 1986. Therefore, we reverse with instructions for the trial court to enter September 15, 1986, as the appropriate date for obtaining vested rights.
In conclusion, we reverse the summary judgment finding that a plain reading of Section 380.05(18) gives the Landowners a vested right to develop their property if the Landowners have demonstrated a good faith reliance and change of position. We also reverse on the cross-appeal with instructions for the trial court to enter September 15, 1986, as the appropriate date that the Landowners' rights vested. We remand for further proceedings consistent with the above analysis.
*713 Reversed and remanded with instructions.
NOTES
[*] Judge Levy did not participate in oral argument.
[1] Chapter 380 also known as "The Florida Environmental Land and Water Management Act of 1972" governs natural resources, conservation, reclamation and use of land and water.
[2] The legislative intent behind designating the Florida Keys an area of critical state concern is to establish a land use management system that protects the natural environment; conserves and promotes the community character; promotes orderly and balanced growth in accordance with the capacity of available and planned facilities and services; provides affordable housing in close proximity to places of employment; promotes and supports a diverse and sound economic base; protects the constitutional rights of property owners to own, use and dispose of their real property and; promotes coordination and efficiency among governmental agencies in the Florida Keys. See § 380.0552, Fla. Stat. (1997).
[3] The first land development regulations were adopted in 1986 pursuant to Sections 380.05(6) and (8), Florida Statutes (1985). In 1992, the Rate of Growth Ordinance ("ROGO") was adopted as part of a state emergency rule. Finally, in January of 1996, Monroe County adopted its 2010 comprehensive plan.
[4] Section 380.06(20)(a), Florida Statutes (1997), provides that:

For the purposes of determining the vesting of rights under this subsection, approval pursuant to local subdivision plat law, ordinances, or regulations of a subdivision plat by formal vote of a county or municipal governmental body having jurisdiction after August 1, 1967, and prior to July 1, 1973, is sufficient to vest all property rights for the purposes of this subsection; and no action in reliance on, or change of position concerning, such local governmental approval is required for this vesting to take place. Anyone claiming vested rights under this paragraph must so notify the department in writing by January 1, 1986. Such notification shall include information adequate to document the rights established by this subsection. When such notification requirements are met, in order for the vested rights authorized pursuant to this paragraph to remain valid after June 30, 1990, development of the vested plan must be commenced prior to that date upon the property that the state land planning agency has determined to have acquired vested rights following the notification or in a binding letter of interpretation. When the notification requirements have not been met, the vested rights authorized by this paragraph shall expire June 30, 1986, unless development commenced prior to that date.
[5] Section 380.085, Florida Statutes (1997), enables a person substantially affected by the denial of a permit to build, to initiate an action in circuit court on the grounds that an area of critical state concern development order effects a taking without compensation.