994 So.2d 362 (2008)
Jimmy T. and Nancy A. BAUKNIGHT, H. Teague Skaggs, Jr. and George W. and Kathleen Rockett, Appellants,
v.
MONROE COUNTY, Appellee.
No. 3D07-915.
District Court of Appeal of Florida, Third District.
September 17, 2008.
*363 Pacific Legal Foundation and Valerie A. Fernandez and Steven G. Gieseler, Stuart, for appellants.
Johnson, Anselmo, Murdoch, Burke, Piper & McDuff, and Michael T. Burke and Tamara M. Scrudders, Ft. Lauderdale, for appellee.
Before GERSTEN, C.J., and COPE and SUAREZ, JJ.
COPE, J.
The plaintiffs property owners appeal a final summary judgment entered in favor of defendant Monroe County on the owners' *364 claim for compensation for the temporary taking of their respective properties. We agree with the trial court that the owners are not entitled to compensation and affirm the summary judgment.
The Bauknights, Mr. Skaggs, and the Rocketts each purchased a vacant lot on Big Pine Key in Monroe County, Florida.[1] They are in a similar situation to the landowners described in Clay v. Monroe County, 849 So.2d 363 (Fla. 3d DCA 2003).
The Bauknights, Mr. Skaggs, and the Rocketts each applied for permits to build a single family home on their respective vacant lots.[2] In 1996, the owners received the necessary approvals and an allocation under the Monroe County Rate of Growth Ordinance (ROGO). See Monroe County Land Development Regulations § 9.5-120 et seq.
The Monroe County Planning Director advised the owners that the building permits would not be issued due to the inadequate level of service on U.S. Highway 1 on Big Pine Key. The Director's memorandum stated:
Pursuant to Sections 9.5-291 and 9.5-292 of the Land Development Regulations, the Growth Management Department has been directed by the Board of County Commissioners to not issue building permits for all traffic-generating development within the Big Pine Key Area due to the inadequate level of service on U.S. 1. The Planning Department will hold your allocation until the Level of Service on U.S. 1 through Big Pine reaches standard "C" or another agreement providing relief from the concurrency requirements is entered into between the County and the Department of Community Affairs (DCA).[3]
As this court explained in Clay:
Standards for levels of service have been developed for U.S. Highway 1 based on methodology developed by the U.S. 1 Level of Service Task Force. Monroe County Land Development Regulations prohibit the issuance of building permits "unless the proposed use is or will be served by adequate public or private facilities." Monroe County Land Development Regulation § 9.5-291. As relates to transportation on Big Pine Key, the definition of an adequate level of service is "C." At the times pertinent here, the level of service on U.S. 1 in Big Pine Key was evaluated as "D" or worse.
849 So.2d at 364-65. Because the level of service for U.S. 1 remained below the minimum required by the Monroe County Land Development Regulations, the permits remained in abeyance.
In 2002 the Planning Director recommended, and the County Commission agreed, to refer these and other properties on Big Pine Key to Special Master J. Jefferson Overby to consider whether a beneficial use determination should be issued under section 9.5-173 of the Monroe County Code.
Under the beneficial use ordinance, "an applicant for a beneficial use must demonstrate that the comprehensive plan and land development regulations in effect at the time of the filing of the beneficial use application deprive the applicant of all reasonable economic use of the property." § 9.5-173, Monroe County, Fla. Code *365 (1986). "The remedies available to an applicant for beneficial use ... include issuance of a permit or just compensation...." Id.
The Special Master found that the owners qualified under the ordinance, and recommended that permits be issued to the owners. The County Commission approved the recommendation in June 2002.
After the permits were issued, the plaintiffs filed a complaint alleging a temporary inverse condemnation of their property. They alleged that there had been a temporary taking of their property for the 1996-2002 period during which they could not build.[4] They claimed in count I a violation of the Fifth Amendment to the United States Constitution and 42 U.S.C. § 1983, and in count II a violation of Article X, section 6 of the Florida Constitution. The trial court entered final summary judgment in favor of Monroe County, and the property owners have appealed.
As a preliminary matter, the owners' taking claims are ripe for judicial consideration. With regard to the claim under federal law, "a takings claim challenging the application of land-use regulations is not ripe unless `the government entity charged with implementing the regulations has reached a final decision regarding the application of the regulations to the property at issue.'" Palazzolo v. Rhode Island, 533 U.S. 606, 618, 121 S.Ct. 2448, 150 L.Ed.2d 592 (2001) (quoting Williamson County Reg'l Planning Comm'n v. Hamilton Bank of Johnson City, 473 U.S. 172, 186, 105 S.Ct. 3108, 87 L.Ed.2d 126 (1985)). "These cases stand for the important principle that a landowner may not establish a taking before a land-use authority has the opportunity, using its own reasonable procedures, to decide and explain the reach of the challenged regulation." Palazzolo, 533 U.S. at 620, 121 S.Ct. 2448; Tahoe-Sierra Pres. Council v. Tahoe Reg'l Planning Agency, 535 U.S. 302, 339, 122 S.Ct. 1465, 152 L.Ed.2d 517 (2002).
In Williamson, the Supreme Court required an owner to apply for a variance before a taking claim would be ripe. 473 U.S. at 193, 105 S.Ct. 3108. Resort to the variance procedure "would result in a conclusive determination by the Commission whether it would allow respondent to develop the subdivision in the manner respondent proposed." Id.
The Williamson logic applies here. The owners were obligated to pursue relief under the beneficial use ordinance and under state law, see Clay, 849 So.2d at 366, before the owners' taking claims were ripe.[5]
*366 In the present case a final decision was made by Monroe County which granted relief to the owners under the beneficial use ordinance. With the making of that final decision, the owners' claims became ripe for judicial consideration.
Turning to the merits, the owners argue that there was a temporary taking here because their building permits were delayed until 2002. In the beneficial use determination, the Special Master found that strict application of the comprehensive plan and land development regulations had prohibited the County from issuing building permits and constituted "a deprivation of all reasonable use of the properties." The owners contend in essence that this finding establishes the existence of a temporary taking, and that they should be compensated for the delay.
We reject the owners' argument. The owners had an available remedy under the beneficial use ordinancebut they failed to apply for that relief. The ordinance "provide[s] a procedure whereby landowners who believe they are deprived of all beneficial use may secure relief through an efficient nonjudicial procedure." § 9.5-161, Monroe County, Fla., Code (1986). The owners could have applied at any time before 2002, but failed to do so. See City of Key West v. Berg, 655 So.2d 196, 196 (Fla. 3d DCA 1995) (discussing availability of beneficial use exception). When applications for beneficial use were filed in 2002, relief was provided to the owners. As the delay in obtaining relief was attributable to the owners themselves, there was no taking and can be no damages for delay.
Turning now to the taking claims under the Florida Constitution, "Florida courts have likewise adopted the ripeness requirements." City of Riviera Beach v. Shillingburg, 659 So.2d 1174, 1180 (Fla. 4th DCA 1995); see Martin County v. Section 28 P'ship, Ltd., 676 So.2d 532 (Fla. 4th DCA 1996); Berg, 655 So.2d at 196. For the reasons stated previously, there was no temporary taking under the Florida Constitution.
Affirmed.
NOTES
[1] The Bauknights purchased their lot in 1987. Mr. Skaggs and the Rocketts purchased their respective lots in 1995.
[2] The Bauknights applied in 1995 and the remaining owners in 1996.
[3] Mr. Skaggs and the Rocketts were so advised in 1996 and the Bauknights in 1997.
[4] For the Bauknights the period would be 1997-2002. See supra note 3.
[5] The owners criticize this court for saying in Clay, "Where an owner is aggrieved by a land use ruling, the owner must exhaust the administrative remedies which are reasonably available before initiating a taking claim." 849 So.2d at 365 (citing Williamson County, 473 U.S. at 186-94, 105 S.Ct. 3108). It is true, as the owners argue, that there is no general requirement to exhaust administrative remedies prior to bringing a claim under 42 U.S.C. § 1983. Williamson, 473 U.S. at 192, 105 S.Ct. 3108; Patsy v. Bd. of Regents, 457 U.S. 496, 516, 102 S.Ct. 2557, 73 L.Ed.2d 172 (1982). However, Williamson requires an owner to pursue such remedies as a variance. This requirement has been referred to by one authority as one of several "special exhaustion requirements" applicable to section 1983 taking cases. 1 Steven H. Steinglass, Section 1983 Litigation in State Courts § 3:30, at 3-154 (2007). "The required use of administrative and judicial remedies in § 1983 actions seems at odds with the no-exhaustion policy generally applicable in § 1983 litigation under Monroe v. Pape [, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961),] and Patsy v. Bd. of Regents [, 457 U.S. 496, 102 S.Ct. 2557, 73 L.Ed.2d 172 (1982)]." Steven H. Steinglass, supra, at 3-156. "[T]he administrative exhaustion requirement in taking cases is really a ripeness or finality requirement under which courts do not entertain taking claims, including claims under § 1983, until it is clear to what extent government has limited the unfettered use of private property." Id. at 3-157.

This court's Clay opinion referred to the relevant part of Williamson, which contains the requirement for an owner to pursue such remedies as variances. Clay, 849 So.2d at 365 (citing Williamson, 473 U.S. at 186-94, 105 S.Ct. 3108).