999 So.2d 709 (2008)
Thomas F. COLLINS and Patricia Collins, Donald Davis; Aurelia Del Valle and Maria Del Valle, Hill Family Investments, Inc.; Richard J. Johnson and Joann C. Johnson; Robert A. Lomrance; Joseph Magrini and Elda S. Magrini; Keith P. Radenhausen; Frank J. Schneider; Mary Ann Ricklin; Rosemary Riordan; Hubert Tost and Marilyn Tost, and Samuel I. Burstyn, P.A., Appellants
v.
MONROE COUNTY, a political subdivision of The State of Florida, and The State of Florida, Appellees.
No. 3D07-1603.
District Court of Appeal of Florida, Third District.
December 31, 2008.
*711 James S. Mattson, Key Largo; Andrew M. Tobin, Tavernier, for appellants.
Stephen J. Moore and Elizabeth A. Moran, Kansas; Suzanne Hutton, Monroe County Attorney, and Derek V. Howard, Assistant County Attorney; Bill McCollum, Attorney General, and Jonathan A. Glogau, Assistant Attorney General, Tallahassee, for appellees.
Before GERSTEN, C.J., and SUAREZ and CORTIÑAS, JJ.
SUAREZ, J.
Thomas F. Collins and Patricia Collins, Donald Davis, Aurelia Del Valle and Maria Del Valle, Hill Family Investments, Inc., Richard J. Johnson and Joann C. Johnson, Robert A. Lomrance, Joseph Magrini and Elda S. Magrini, Keith P. Radenhausen, Frank J. Schneider, Mary Ann Ricklin, Rosemary Riordan, Hubert Tost and Marilyn Tost, and Samuel I. Burstyn, P.A., [collectively, "the Landowners"] appeal from a final order granting summary judgment for the Defendants, Monroe County and the State of Florida, in an inverse condemnation case. The trial court found that there was a facial taking of the properties in question and, as such, each landowner's cause of action was barred by the four-year statute of limitations. We reverse and remand as we find the taking to be an "as-applied" taking and, as such, the statute of limitations had not run.[1]
The Landowners own real property in Monroe County. In 1997, the Landowners filed Beneficial Use Determination (BUD) petitions[2] pursuant to the Monroe County Year 2010 Comprehensive Plan.[3] A BUD petition requires an applicant to demonstrate that the comprehensive plan and land development regulations in effect at the time of the BUD application deprive the applicant of all reasonable economic use of the property.[4] In 2000, the BUD petitions were heard by a Special Master. The record indicates that the County Planning Director recommended that the Special Master find that the properties were rendered unbuildable under the County's Comprehensive Plan and other regulatory *712 considerations, and that the County purchase the properties. The Landowners did not contest that recommendation; the record indicates that they agreed that purchase was the preferred relief. Between 2001 and 2003, the Special Master in each case determined that the Landowners' properties had been deprived of all use and value and, following the County Planning Director's advice, recommended that the County purchase the properties. The Monroe County Board of County Commissioners ("BOCC") reviewed the BUD recommendations, found that each Landowner had been deprived of "all economic use" of his property, and approved the Special Master's recommendations that the County purchase the properties.
Between 2002 and 2004, the BOCC rendered final BUD resolutions for the Landowners.[5] In 2004, the Landowners filed a complaint against Monroe County for inverse condemnation[6] seeking just compensation for the alleged permanent constitutional taking of their property.
The County filed a third-party complaint against the State. The Landowners filed a motion for summary judgment as to liability and the County and State filed cross-motions for summary judgment arguing, in part, that the four-year statute of limitations on the Landowners' claims to compensation for regulatory takings began in 1997, on the date they filed their BUD Petitions.[7] Thus, they argued the limitations period had since expired and the Landowners were barred. Prior to any ruling, the Landowners amended their complaint to seek compensation for both a temporary and permanent taking, and abandoned their motion for summary judgment.
At the initial hearing, the court determined that an "as-applied" taking rather than a "facial" taking had occurred. It then held, however, that the Landowners' claims were not ripe for judicial determination as the Landowners had not applied for and received a final determination from the local government permitting authority as to permissible uses, if any, of their property. The trial court concluded that the Landowners' BUD applications did not constitute the final determination from the local government required to ripen their "as-applied" takings claims. The trial court found that the BUD resolutions were not final determinations of whether or how the properties could be developed.
The successor trial judge set the case for bench trial. After hearing arguments, *713 the trial court entered the amended order granting summary judgment in favor of the County and the State, which is the subject of this appeal. The trial court determined that the "BUD petitions do not constitute the meaningful applications necessary to ripen an as-applied taking claim," and that, "the claims must be treated in this case as facial takings claims." The trial court order concluded that, as the taking was a facial taking and, as the Landowners did not file their facial takings claims within four years of the adoption of the complained-of 1996 Monroe County Year 2010 Comprehensive Plan, their inverse condemnation suit filed in 2004 was barred by the statute of limitations.
Our review must necessarily begin with determining whether there has been a facial taking as found by the trial court or an as-applied taking because the dates of those events will fix the start of the limitations period in relation to the date of the Landowners' filing suit. There is an important distinction between the two types of claims and each raises different ripeness and statute of limitations issues.
A facial taking, also known as a per se or categorical taking, occurs when the mere enactment of a regulation precludes all development of the property, and deprives the property owner of all reasonable economic use of the property. See Lucas v. South Carolina Coastal Council, 505 U.S. 1003, 1017, 112 S.Ct. 2886, 120 L.Ed.2d 798 (1992); Tahoe-Sierra Preservation Council, Inc. v. Tahoe Regional Planning Agency, 535 U.S. 302, 122 S.Ct. 1465, 152 L.Ed.2d 517 (2002) (holding that the deprivation of economic value required for a facial takings claim is limited to the extraordinary circumstance when no productive or economically beneficial use of the land is permitted). Anything less than a complete elimination of economically beneficial use or value of the land is not a facial taking. Lucas, 505 U.S. at 1019-20 n. 8, 112 S.Ct. 2886; Taylor v. Village of North Palm Beach, 659 So.2d 1167, 1170-71 (Fla. 4th DCA 1995) (holding that the standard of proof for a facial taking is whether the regulation at issue has resulted in deprivation of all economic use); Golf Club of Plantation, Inc. v. City of Plantation, 717 So.2d 166, 170 (Fla. 4th DCA 1998) (overview of federal takings analysis). The Supreme Court has recognized that "facial takings challenges face an uphill battle since it is difficult to demonstrate that mere enactment of a piece of legislation deprived the owner of all `economically viable use of [his] property.'" Suitum v. Tahoe Regional Planning Agency, 520 U.S. 725, 736 n. 10, 117 S.Ct. 1659, 137 L.Ed.2d 980 (1997).
In an as-applied claim, the landowner challenges the regulation in the context of a concrete controversy specifically regarding the impact of the regulation on a particular parcel of property. Taylor, 659 So.2d at 1167. The standard of proof for an as-applied taking is whether there has been a substantial deprivation of economic use or reasonable investment-backed expectations. See generally Penn Central Transp. v. City of New York, 438 U.S. 104, 98 S.Ct. 2646, 57 L.Ed.2d 631 (1978) (considering the economic impact of the regulation on the claimant, the extent to which the regulation has interfered with distinct investment-backed expectations, and the character of the government action; diminution in the property value alone cannot establish a taking); Taylor, 659 So.2d at 1167. The question presented is whether the record shows that the Landowners were deprived by the enactment of the 2010 Comprehensive Plan of all economic use of their property, which amounts to a facial taking, or were deprived of substantial use of their property, but left with *714 some economic value, which is an as-applied taking.
The record shows that the enactment of the regulation did not deprive the Landowners of all reasonable economic use of their property.[8] There is evidence in the record that a subset of the Landowners received post-BUD building permits, or even sold their property.[9] This is strong evidence that those particular properties did, in fact, have development value, that the value of those properties was not completely eliminated by application of the 2010 Comprehensive Plan, and contradicts the findings of the Special Master and the BOCC that a facial taking occurred.
The Landowners who have sold their property since the BOCC BUD resolutions have chosen to recoup their investment privately; again showing that the value of the property was not totally eliminated by enactment of the 2010 Comprehensive Plan. These Landowners have received compensation and their individual causes of action for a constitutional taking may be moot. See, City of Winter Park v. Rich, 692 So.2d 986 (Fla. 5th DCA 1997) (holding that plaintiff who sold property at issue lacked standing to challenge city's denial of variance to build on lot, absent allegation that he sold lot for less than fair value due to denial of variance, rendering his claim moot). To receive additional compensation from the County as part of the current takings action would be a windfall above and beyond what they received via sale to private parties.
Similarly, those property owners who received development permits may have no further cause of action for just compensation for the as-applied taking of their propertiesany taking was compensated by the grant to the landowner of a permit to develop the property, i.e., the economic expectation of the landowner has been *715 met.[10] As the economic expectation of some of the Landowners, at least, was not reduced to zero through the operation of the land use regulations, there has been no facial taking of those properties.
The County admitted in the record that the Big Pine Key properties had development potential, but because of a temporary building moratorium (see Ambrose) and a critical habitat plan that had not yet been finalized, the County recommended a finding of complete elimination of beneficial use of those particular properties. It is not clear from the record before us whether, or if, the building moratorium issue or critical habitat plan was resolved during the BUD process. Resolution of either of these two outstanding matters between filing and resolution of the BUD applications may have had an impact on the development potential of the properties and the economic expectations of the Landowners so affected.
As explained above, an examination of the record with regard to the affected properties indicates that the enactment of the State Comprehensive Plan and the Monroe County Year 2010 Comprehensive Plan did not deprive the Landowners of all beneficial use of their properties. We thus find that any facial challenge based on just compensation principles must fail as a matter of law. The Landowners' claims are properly brought as as-applied challenges to the application of the Monroe County land use regulations to specific parcels of property.
The next question to be answered as part of this analysis is whether the Landowners' cause of action for an as-applied taking is ripe for judicial review. To be ripe for judicial review the Landowners must show a final determination from the government as to the permissible use, if any, of the property. If there has not been a final determination, the Landowners' attempt to seek redress from the court is premature. Williamson County Regional Planning Comm'n v. Hamilton Bank, 473 U.S. 172, 186-94, 105 S.Ct. 3108, 87 L.Ed.2d 126 (1985). In Williamson County, the Supreme Court held that an "as-applied" Fifth Amendment takings claim against a municipality's enforcement of its regulations is not ripe until (1) "the government entity charged with implementing the regulations has reached a final decision regarding the application of the regulations to the property at issue" (the "rule of finality"), and (2) "if a State provides an adequate procedure for seeking just compensation, the property owner cannot claim a violation of the Just Compensation Clause until it has used the procedure and been denied just compensation." Florida courts have adopted this federal ripeness requirement. See, City of Jacksonville v. Wynn, 650 So.2d 182 (Fla. 1st DCA 1995); Tinnerman v. Palm Beach County, 641 So.2d 523, 526 (Fla. 4th DCA 1994); Glisson v. Alachua County, 558 So.2d 1030, 1034 (Fla. 1st DCA 1990). The ripeness requirement applies only to as-applied takings and does not apply to facial takings because in a facial taking "the mere enactment of the regulation constitutes the taking of all economic value to the land." Lost Tree Village Corp. v. City of Vero Beach, 838 So.2d 561, 571 (Fla. 4th DCA 2002); see also Taylor, 659 So.2d at 1172 n. 3 (explaining that "based on Supreme Court precedent[,] the ripeness doctrine *716 has generally not been applied to facial challenges").
Ordinarily, before a takings claim becomes ripe, a property owner is required to follow "reasonable and necessary" steps to permit the land use authority to exercise its discretion in considering development plans, "including the opportunity to grant any variances or waivers allowed by law." Palazzolo v. Rhode Island, 533 U.S. 606, 620-21, 121 S.Ct. 2448, 150 L.Ed.2d 592 (2001). The requirement is usually met when the property owner files an application for a development permit with the local land use authority and receives a grant or denial of the permit. See, Glisson 558 So.2d at 1036 (holding that property owner failed to apply for, and been denied, a development permit, variance or rezoning request, resulting in a facial challenge). Once it becomes clear that the government authority "lacks the discretion to permit any development, or [that] the permissible uses of the property are known to a reasonable degree of certainty," it is only then that a takings claim is likely ripe. Palazzolo, 533 U.S. at 620, 121 S.Ct. 2448.
The Monroe County BUD Ordinance itself answers the ripeness question. The BUD Ordinance was designed as a way to avoid constitutional takings lawsuits by providing other means of compensating for total or partial regulatory loss of economically beneficial use of property. In this way, the BUD Ordinance differs from land use regulations in other jurisdictions in that it accounts for both facial and as-applied takings, as seen in its bifurcated relief of either outright purchase of the property (in the case of a per se taking) or grant of Transferable Development Rights (TDRs), Rate Of Growth Ordinance (ROGO) points, variances and building permits (in the case of an as-applied taking).[11]
*717 In this case, the BOCC concluded, pursuant to the BUD Ordinance and after public hearing, that there was no further beneficial use of the properties and that the County should purchase them. Those BUD Resolutions were a final decision from the appropriate governmental entity as to the nature and extent of the development that will be permitted.[12] Once the BOCC rendered a final decision on the BUD applications, the Landowners' claims became ripe.[13]See Bauknight v. Monroe County, 994 So.2d 362 (Fla. 3d DCA 2008) (holding that a final decision by the county granting relief under the BUD ordinance ripened the Landowners' claims for judicial consideration). At that time the statute of limitations for filing an inverse condemnation action began to run. Of course, if the County sits on its hands post-BUD and does nothing to provide the agreed-upon compensation, a landowner cannot wait until the limitation period runs before seeking judicial relief. In this case, the Landowners properly pursued administrative remedies,[14] their claims ripened in 2002 when the BOCC Resolutions were rendered, and the Landowners filed their suit in 2004, well within the four-year limitations period for filing an action for inverse condemnation.[15]
Where the land use ordinance, in this case the BUD Ordinance, leaves open the possibility of reasonable use, a facial challenge will likely be unsuccessful. See Agins v. City of Tiburon, 447 U.S. 255, 260-61, 100 S.Ct. 2138, 65 L.Ed.2d 106 (1980). The land use regulations, zoning and permitting ordinances applicable to the properties at the time the Landowners filed their BUD applications contemplated viable uses for some of the subject properties, and prohibited certain uses in others. The BUD process provided a mechanism whereby both Landowners and Monroe County could assess all possible uses and viable remedies, as well as seek additional uses of the properties through variances or TDRs designed to avoid the very action before us. The BOCC's Resolutions to the BUD applications were final decisions by the government entity charged with implementing the regulations regarding the application of the regulations to the property at issue. See Williamson County, 473 U.S. at 186-94, 105 S.Ct. 3108. The Landowners' claims for inverse condemnation were ripe in 2002 when the BOCC rendered *718 its BUD Resolutions, and the cause of action was timely filed within the four-year statute of limitations.
We thus reverse the summary judgment order in its entirety, and remand for consideration of those factors necessary to evaluate an as-applied taking specific to each of the Landowners. It remains for the trial court to determinefor each of the propertieswhat, if any, reduction in beneficial use has been sustained by application of the challenged land use regulation. In determining to what compensation, if any, the Landowners are entitled, the court must take into consideration the reasonable investment-backed expectations of each Landowner relative to date of purchase (pre- or post-land use regulation)[16] and post-BUD resolution events (sale of property, grants of development permits, lifting of moratoria, etc.) that, despite the BOCC's resolutions finding complete diminution of value, may have an impact on the type and level of compensation to be granted to each.
Reversed and remanded with directions.
NOTES
[1] We address in this opinion solely the issue of the summary judgment and make no other determinations. Summary judgment is appropriate only when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Volusia County v. Aberdeen at Ormond Beach, L.P., 760 So.2d 126, 130 (Fla.2000). Therefore, our review of the trial court's final summary judgment is de novo. Id.; Major League Baseball v. Morsani, 790 So.2d 1071, 1074 (Fla. 2001)
[2] Monroe County Code, Sec. 9.5-161. Purpose. It is the purpose and intention of the Board of County Commissioners to ensure that each and every landowner has a beneficial use of his property in accordance with the requirements of the Fifth and Fourteenth Amendments to the United States Constitution and to provide a procedure whereby landowners who believe they are deprived of all beneficial use may secure relief through an efficient non-judicial procedure. (Ord. No. 33-1986, § 8-101)
[3] In 1985, the legislature enacted a State Comprehensive Plan, effective July 1, 1985, ch. 85-57, 1985 Fla. Laws 295 (codified as amended at Fla. Stat. ch. 187 (2000)); in 1986, the State Comprehensive Plan was adopted by Monroe County. The Monroe County Year 2010 Comprehensive Plan was adopted by the Board of County Commissioners on April 15, 1993; amended pursuant to DCA Rule 9J-14.022, January 4, 1996; and adopted by FAC Rule 28-20.100 Part I, January 2, 1996 and Part II, July 14, 1997.
[4] Monroe County Code, Sec. 9.5-173, Relief Under Beneficial Use.
[5] At the same time they filed the BUD petitions, the Landowners moved to intervene in the pending case of Ambrose v. Monroe County, a 1997 circuit court case filed by other property owners seeking declaratory relief to determine their rights under Ch. 380, Fla. Stat. (which designates the Florida Keys as an Area of Critical Concern), and to determine the effect of the 1986 Land Development Regulations and the 1996 Comprehensive Plan. The trial court found in favor of the Landowners, but on appeal this Court reversed the ruling. See Monroe County v. Ambrose, 866 So.2d 707 (Fla. 3d DCA 2003). As Intervenors, the Landowners are subject to the holding in Ambrose requiring that they "demonstrate a good faith reliance on section 380.05(18) and change of position in furtherance of developing their land in order to have vested rights to develop their property." Id. at 711-12.
[6] The term "inverse condemnation" refers to the process by which a landowner recovers damages from a governmental taking of his property, even though no formal takings or condemnation proceedings have been instituted. United States v. Clarke, 445 U.S. 253, 257, 100 S.Ct. 1127, 63 L.Ed.2d 373 (1980).
[7] § 95.11(3)(p), Fla. Stat. (2007). The catch-all four-year statute of limitations found within section 95.11(3)(p) has been held to govern inverse condemnation actions. Sarasota Welfare Home, Inc. v. City of Sarasota, 666 So.2d 171, 172 (Fla. 2d DCA 1995).
[8] The record reveals that the Landowners purchased their properties at different times; some of the purchases date back to before the implementation of land use regulations. The Landowners' properties are located on different islands in the Florida Keys chain; their properties differ in quality and land use classifications and, as a result, have differing development potentials: Burstyn: unimproved lots on Center Island, Duck Key, purchased 3/20/87, zoned Improved Subdivision-Masonry (IS-M); Del Valle: unimproved lots on Center Island, Duck Key, purchased 3/11/90, zoned Improved Subdivision-Masonry (IS-M); Collins: Unimproved, scarified lots on Big Pine Key, purchased 4/25/91 and 5/15/87, zoned Improved Subdivision (IS), subject to temporary building moratorium; Davis: Unimproved, scarified lots on Big Pine Key, purchased 8/2/82, zoned Improved Subdivision (IS), subject to temporary building moratorium; Johnson: Unimproved, scarified lots on Big Pine Key, purchased 4/7/86 and 4/15/90, zoned Improved Subdivision (IS), subject to temporary building moratorium; Magrini: Unimproved, scarified lots on Big Pine Key, purchased 10/29/94, zoned Improved Subdivision (IS), subject to temporary building moratorium; Radenhausen: Unimproved, scarified lots on Big Pine Key, purchased 3/31/89, zoned Improved Subdivision (IS), subject to temporary building moratorium; Lomrance: Unimproved lots, Big Torch Key, purchased 5/13/81, zoned Native Area (NA); Schneider/Riordan/Ricklin: Unimproved lots, Ramrod Key, purchased 9/8/84, zoned Native Area (NA) wetlands; Tost: Unimproved lot, Summerland Key, purchased 10/17/68, zoned Sparsly Settled-Native Area (SS-NA) wetlands; Hill: unimproved lots, Key Largo, purchased 10/84, zoned Suburban Residential (SR).
[9] Magrini and Collins received building permits after they received their final BUD resolutions from the County. Magrini received a building permit on April 12, 2006; Collins received a building permit on March 12, 2007. On February 16, 2007, the Magrini Property was sold for $370,000. The record shows that, as of May 9, 2007, the Collins Property was listed for sale in the amount of $995,000.
[10] Cf. Suitum, 520 U.S. 725 at 749-750, 117 S.Ct. 1659 (Scalia, J. concurring: "TDRs can serve a commendable purpose in mitigating the economic loss suffered by an individual whose property use is restricted, and property value diminished, but not so substantially as to produce a compensable taking. They may also form a proper part, or indeed the entirety, of the full compensation accorded a landowner when his property is taken.").
[11] Monroe County Code, Sec. 9.5-173-Relief Under Beneficial Use:

(a) In order to establish that the applicant is entitled to relief, an applicant for a beneficial use must demonstrate that the comprehensive plan and land development regulations in effect at the time of the filing of the beneficial use application deprive the applicant of all reasonable economic use of the property. The remedies available to an applicant for beneficial use will include issuance of a permit or just compensation by purchase of all or some of the lots or parcels or purchase of the development rights (leaving the lot in private ownership) at the fair market value immediately prior to the comprehensive plan or land development regulations in effect at the time of the filing of the beneficial use application.
(1) Just compensation shall be the preferred option if:
(a) Beneficial use has been deprived by operation of environmental policies or objectives contained in the comprehensive plan and land development regulations in effect at the time of the filing of the beneficial use application or article VII, division 8 of the land development regulations ("Environmental Criteria"); or
(b) A strict, literal application or enforcement of the comprehensive plan or land development regulations in effect at the time of filing of the beneficial use application prevents all reasonable economic use, but is required to protect the public health, welfare or safety.
(2) If just compensation is not preferred, the determination may allow for additional use(s) or density beyond that allowed by a strict, literal application of the comprehensive plan and land development regulations in effect at the time of filing of the beneficial use application on this particular property (i.e., some additional, reasonable economic use) which may include the granting of an:
(a) Exemption; or
(b) Permit for development despite the offending regulation (an order shall state which offending regulation(s) are inapplicable or waived and such a permit shall be subject to normal construction deadlines and expiration dates under chapter 6 of the Monroe County Code); or
(c) Transferable development rights (TDRs); or
(d) Any combination of the above; or
(e) Any other relief the county determines appropriate and adequate to prevent a taking, i.e., which will allow for reasonable economic use of the subject property or just compensation under the goals, objectives and policies of the comprehensive plan and land development regulations in effect at the time of the filing of the beneficial use application.
(Ord. No. 21-1998, § 4)
[12] Monroe County Code, sec. 9.5-174. Final determination by BOCC. The board of county commissioners is the only entity which has final authority to grant or deny vested rights or beneficial uses subject to appeal by DCA under chapter 380.
[13] We limit this holding to actions filed pursuant to the Monroe County Beneficial Use Determination ordinance that encompasses both per se and as-applied determinations and provides for appropriate relief.
[14] Where an owner is aggrieved by a land use ruling, the owner must exhaust the administrative remedies which are reasonably available before initiating a taking claim. See Clay v. Monroe County, 849 So.2d 363 (Fla. 3d DCA 2003), citing to Williamson County Regional Planning Commission v. Hamilton Bank of Johnson City, 473 U.S. 172, 186-94, 105 S.Ct. 3108, 87 L.Ed.2d 126 (1985); Hodel v. Virginia Surface Mining & Reclamation Ass'n, 452 U.S. 264, 297, 101 S.Ct. 2352, 69 L.Ed.2d 1 (1981); Agins v. City of Tiburon, 447 U.S. 255, 260, 100 S.Ct. 2138, 65 L.Ed.2d 106, (1980); Galaxy Fireworks, Inc. v. City of Orlando, 842 So.2d 160, 164 (Fla. 5th DCA 2003); Lost Tree Village Corporation v. City of Vero Beach, 838 So.2d 561 (Fla. 4th DCA 2002); Tinnerman v. Palm Beach County, 641 So.2d 523, 526 (Fla. 4th DCA 1994).
[15] § 95.11(3)(p), Fla. Stat. (2007).
[16] See, Ambrose, 866 So.2d at 711 ("Monroe County was designated an area of critical state concern in 1979, but the first land use regulations were not enacted until 1986. If the Landowners did not start development prior to the enactment of these land regulations, they acted at their own peril in relying on the absence of zoning ordinances.").