CORTIÑAS, J.
 

 In 1970, Gordon and Molly Beyer purchased Bamboo Key, an offshore island of approximately nine acres in unincorporated Monroe County (the “Property”). At the time of the purchase, undeveloped offshore islands were zoned “General Use” and were allowed development at a density of one dwelling unit per acre. In late 1986, Monroe County adopted the State Comprehensive Plan which, among other impacts, changed the zoning designation of the Property to “Offshore Island.” The new designation came with a density limit of one unit per ten acres. A decade later, in early 1996, Monroe County’s Year 2010 Comprehensive Plan (the “1996 Plan”) was adopted.
 
 [1]
 
 Pursuant to the 1996 Plan, development on the Property was prohibited because it was classified as a “bird rookery.” However, the Property could still be used for camping, bird watching, and other types of nature-related activities.
 

 The Beyers, in 1997, applied to Monroe County for a beneficial use determination (“BUD”) as provided in the 1996 Plan. The City of Marathon (the “City”) was incorporated in November 1999, and the Property consequently became part of the City. The 1996 Plan and Monroe County’s
 
 *934
 
 land development regulations were adopted by the City, but at the time of incorporation, no action had been taken on the Beyers’ BUD application. In compliance with the City’s instructions, the Bey-ers filed a new BUD application in November 2002. In 2003, the Beyers filed yet another application after having been informed that the previous one had been lost. In 2004, following the filing of a mandamus action by the Beyers, the City agreed to render a final BUD determination within six months of November 1, 2004.
 

 A BUD hearing was subsequently held in front of a special master. Among the findings made by the special master was that “[u]nder the [1996 Plan] ... the [Property became completely unbuildable due to no development allowed on off shore islands documented as a bird rookery.” Following the hearing, the special master recommended denial of the BUD application for various reasons, including that “the [Beyers] sat on the investment in the [Property for 30 years watching the environmental restrictions on the use of the [Property become more and more strict,” and that “the award of ROGO
 
 [2]
 
 points and recreational uses allowed [the Beyers], reasonably met [the Beyers’] investment-based expectations.”
 
 [3]
 

 Following the City’s adoption of the special master’s recommendation on September 27, 2005, the Beyers filed a complaint for inverse condemnation against the City on December 14, 2005 and, on December 11, 2007, sued the State of Florida. The trial court eventually granted summary judgment against the Beyers, finding that they had exceeded the four-year statute of limitations imposed by section 95.11(3)(p), Florida Statutes. We reverse.
 

 We review the trial court’s order granting of summary judgment de novo.
 
 Volusia County v. Aberdeen at Ormond Beach, LP,
 
 760 So.2d 126 (Fla.2000). The trial court based its grant of summary judgment on the premise that the statute of limitations accrued with the enactment of the 1996 Plan because the Beyers’ claim was “for a facial taking ... [and] there is no ripeness requirement for a facial taking claim.... [A] facial taking claim accrues, and the statute of limitations begins to run, on the date of enactment of the regulation alleged to have caused the taking.” As we set forth in
 
 Collins v. Monroe County,
 
 999 So.2d 709 (Fla. 3d DCA 2008), “[a] facial taking, also known as a per se or categorical taking, occurs when the mere enactment of a regulation precludes all development of the property, and deprives the property owner of all reasonable economic use of the property.”
 
 Id.
 
 at 713 (citing
 
 Lucas v. So. Carolina Coastal Council,
 
 505 U.S. 1003, 1017, 112 S.Ct. 2886, 120 L.Ed.2d 798 (1992)). We disagree that the mere enactment of the 1996 Plan, on its face, deprived the Beyers of all reasonable economic use of the Property. The City and State, while arguing that no taking has occurred, concede in their answer brief that “[t]he evidence will ultimately reveal that the Property can be used for camping and other recreational uses. The Property also has additional beneficial economic value because it has transferable development rights.” (Emphasis added). As such, the Beyers were not at all precluded from claiming an as-applied taking of their property.
 

 In
 
 Shands v. City of Marathon,
 
 999 So.2d 718 (Fla. 3d DCA 2008), we stated that
 

 
 *935
 
 An as-applied takings claim challenging the- application of a land use ordinance is not ripe until the plaintiff has obtained a final decision regarding the application of the regulations to the plaintiffs property. The [plaintiffs] obtained a decision as to the application of the regulations to the property when they went through the BUD process and obtained a decision from the Marathon City Council.
 

 Id.
 
 at 725.
 

 Moreover, as we noted in
 
 Collins,
 
 “[o]rdinarily, before a takings claim becomes ripe, a property owner is required to follow ‘reasonable and necessary’- steps to permit the land use authority to exercise its discretion in considering development plans, ‘including the opportunity to grant any variances or waivers allowed by law.’ ”
 
 Collins,
 
 999 So.2d at 716 (quoting
 
 Palazzolo v. Rhode Island,
 
 533 U.S. 606, 620-21, 121 S.Ct. 2448, 150 L.Ed.2d 592 (2001)). In the case before us, the Beyers, in close' proximity to the time the 1996 Plan was enacted, sought the quasi-judicial relief available to them via the BUD process. Based upon the information in the record, it appears that any delay in the processing of the Beyers’ BUD applications, was not caused by any action or inaction on their part. It would be patently unfair, if not absurd, to allow the county, and later the City, to delay the timely processing of the BUD application, provide a determination after the expiration of the purported limitations period, and then claim the expiration of the limitations period as a defense.
 

 We find that the City’s adoption of the special master’s recommended BUD denial on September 27, 2005 effectively started the limitations period on the Bey-ers’ as-applied taking claim and, therefore, the inverse condemnation complaints against the City and the State of Florida were timely filed.
 
 See Collins,
 
 999 So.2d at 717. Entry of summary judgment on the basis of the statute of limitations was therefore improper and, accordingly, we reverse.
 

 Reversed and remanded.
 

 [1]
 

 . Part I of the 1996 Plan went into effect in January 1996, and Part II became effective in mid-July 1997.
 

 [2]
 

 . Rate of Growth Ordinance.
 

 [3]
 

 . The special master valued the Property’s ROGO points at approximately $150,000.00.