CORTINAS, J.
“[G]eography blended with time equals destiny.”
—Joseph Brodsky
An appeal, and perhaps destiny, bring us back to that unique segment of geography knows as the Florida Keys. In our fifth encounter[1] with these particular appellants, we again explore properties on myriad Keys whose ownerships span decades and whose course to potential development traverses equally numerous paths. The Landowners[2] now return to our Court seeking review of the Final Judgment Denying and Granting Liability entered by the trial court.[3] We affirm.
I. Procedural Background
The Landowners own property in Monroe County, Florida (the “County”). Pursuant to the Monroe County Year 2010 Comprehensive Plan (the “2010 Plan”),[4] the Landowners filed petitions for a Beneficial Use Determination (“BUD”). “A BUD petition requires an applicant to demonstrate that the comprehensive plan and land development regulations in effect at the time of the BUD application deprive the applicant of all reasonable economic use of the property.” Collins v. Monroe Cnty., 999 So.2d 709, 711 (Fla. 3d DCA 2008) (“Collins /”) (citing Monroe Cnty. Code, Sec. 9.5-173, Relief Under Beneficial Use). The petitions were heard in 2000 by a Special Master. Collins I, 999 So.2d at 711. Following the recommendation of the County’s Planning Director, the Special Master hearing each petition determined that each Landowner had been deprived of all use and value of their respective properties and further recommended that the County purchase each of the Landowners’ properties. Id. at 711-12. The County’s Board of Commissioners (“BOCC”) approved the recommendations to purchase the properties. Between 2002 and 2004, the BOCC issued resolutions finding in each instance that applicant had been “deprived of all economic use” of the property at issue and the appropriate remedy was just compensation by purchase in accor *874 dance with the 2010 Plan and the Monroe County Code (the “Code”).
In 2004, the Landowners filed an inverse condemnation action against the County “seeking just compensation for the alleged permanent constitutional taking of their property.” Id. at 712. The County, in turn, filed a third party action against the State of Florida. The trial court eventually granted summary judgment against the Landowners, finding that the “ ‘BUD petitions do not constitute the meaningful applications necessary to ripen an as-applied takings claim,’ and that, ‘the claims must be treated in this case as facial takings claims.’ ” Id. at 713.
On appeal, we reversed since the Landowners’ claims were “properly brought as as-applied challenges to the application of the Monroe County land use regulations to specific parcels of property.” Id. at 715. Furthermore, we held that “the Landowners’ claims for inverse condemnation were ripe in 2002 when the BOCC rendered its BUD Resolutions, and the cause of action was timely filed within the four-year statute of limitations.” Id. at 717-18. In arriving at our holding, we specified that
The record shows that the enactment of the regulation did not deprive the Landowners of all reasonable economic use of their property. There is evidence in the record that a subset of the Landowners received post-BUD building permits, or even sold their property. This is strong evidence that those particular properties did, in fact, have development value, that the value of those properties was not completely eliminated by application of the 2010 Comprehensive Plan, and contradicts the findings of the Special Master and the BOCC that a facial taking occurred.
Id. at 714. We then remanded “for consideration of those factors necessary to evaluate an as-applied taking specific to each of the Landowners” and specifically instructed the trial court to:
[Djetermine — for each of the properties — what, if any, reduction in beneficial use has been sustained by application of the challenged land use regulation. In determining to what compensation, if any, the Landowners are entitled, the court must take into consideration the reasonable investment-backed expectations of each Landowner relative to date of purchase (pre-or post-land use regulation) and post-BUD resolution events (sale of property, grants of development permits, lifting of morato-ria, etc.) that, despite the BOCC’s resolutions finding complete diminution of value, may have an impact on the type and level of compensation to be granted to each.
Id. at 718 (emphasis added).
In accordance with our opinion in Collins I, a nine-day liability bench trial on the Landowners’ regulatory takings claims was held in April 2011.[5] The trial court found liability solely in favor of Mr. Davis and found no liability as to the other Landowners. We affirm.
II. Facts
The trial court made several findings of fact as to the properties at issue. Since this was a bench trial, the trial judge’s findings come to us clothed with a presumption of correctness and will not be disturbed unless the appellants are able to demonstrate that the findings are clearly erroneous. Taylor v. Richards, 971 So.2d 127, 129 (Fla. 4th DCA 2007); Universal Beverages Holdings, Inc. v. Merkin, 902 So.2d 288, 290 (Fla. 3d DCA 2005).

*875
A.The Lomrance Property

The Lomrance Property was purchased in 1981 for $6,000 and consists of four (4) unimproved lots on Big Torch Key. Mr. Lomrance was later offered $144,000 by Florida Forever, the Florida Department of Environmental Protection’s land acquisition program, but the offer was refused.

B.The Tost Property

The Tost Property is located on Sum-merland Key and was purchased in 1968 by Mr. Tost. At the time of purchase, Mr. Tost could have built as many as eight (8) homes. Presently, there are three recently-developed homes near the Tost property. Construction required dredge and fill permits as well as mangrove mitigation. Additionally, culverts were installed to alleviate the potentially stymied water flow.

C.The Davis, Johnson, and Radenhauser Properties

The trial court addressed these three properties together because of their “striking similarities.” All three properties are located on Big Pine Key. Based upon the evidence presented, the trial court found that the properties were “incongruous with their neighbors” because the properties are surrounded by improved real estate. It bears noting that the properties owned by the Magrinis and the Collins were also located on Big Pine Key and building permits were issued as to both properties.

D.The Burstyn and Del Valle Properties

Both the Burstyn and Del Valle properties are located on Duck Key. The trial court found that both lots are highly suitable for single family homes.
The Burstyn property was obtained in 1987 as partial payment for attorney services rendered. It is bordered by a nearly-completed stilt home.
The Del Valles purchased their property in 1990 and were put on notice of possible development issues that could potentially impede, though not entirely eliminate, their ability to improve their property.[6]

E.The Hill Property

The Hill property was purchased in October 1984. The Hills own a successful fishing business on Key Largo. Their original intent was to clear the lot to create parking for the Hills’ retail market and for storage of commercial and recreational fishing gear. A Hill family descendant testified at trial that their present interest remains using the lot to park cars, store traps, and provide space for boat trailers.
III. Analysis
As we have previously set forth, “[i]n addressing whether a ‘taking’ has occurred, the United States Supreme ‘Court’s decisions have identified several factors that have particular significance. The economic impact of the regulation on the claimant and, particularly, the extent to which the regulation has interfered with distinct investment-backed expectations are, of course, relevant considerations.’” Galleon Bay Corp. v. Bd. of Cnty. Comm’rs of Monroe Cnty., 105 So.3d 555, 565 (Fla. 3d DCA 2012) (quoting Penn Cent. Transp. Co. v. City of New York, 438 U.S. 104, 124, 98 S.Ct. 2646, 57 L.Ed.2d 631 (1978)). Moreover, “ ‘whether a particular restriction will be rendered invalid *876 by the government’s failure to pay for any losses proximately caused by it depends largely upon the particular circumstances [in that] case.’ ” Id. (quoting Penn Cent. Transp. Co., 438 U.S. at 124, 98 S.Ct. 2646).
While the Landowners own properties on distinct areas of the Florida Keys, there appears to be one underlying commonality among them: with the exception of Mr. Davis, the Landowners did not take meaningful steps toward the development of their respective properties, or seek building permits, during their sometimes decades-long possession of their properties. While the Landowners appear to rely heavily on the BUDs and BOCC resolutions, which found that they had been deprived of all economic use of their properties, it would have been difficult for the trial court to find that the Landowners had, in fact, been deprived of all economic use of their land where building permits were issued to the Collins and Magrinis, even after the BUDs and BOCC resolutions. Furthermore, as we noted in Collins I, “Monroe County was designated an area of critical state concern in 1979, but the first land use regulations were not enacted until 1986. If the Landowners did not start development prior to the enactment of these land regulations, they acted at their own peril in relying on the absence of zoning ordinances.” Collins I, 999 So.2d at 718 n. 16 (quoting Monroe Cnty. v. Ambrose, 866 So.2d 707, 711 (Fla. 3d DCA 2003) (“It would be unconscionable to allow the Landowners to ignore evolving and existing land use regulations under circumstances when they have not taken any steps in furtherance of developing their land.”)). The property owner in Galleon Bay serves as a suitable contrast to the Landowners in the instant case. In Galleon Bay, the property owner, over the course of several decades, proceeded with numerous efforts to improve its land including, but not limited to, having its subdivision platted, having the zoning district changed, extensively negotiating with the County, and revising its plat. Galleon Bay, 105 So.3d at 555-61. Here, there was a noticeable lack of meaningful efforts by the Landowners to explore the possible development options where, under the specific facts of this case, they became aware that building permits could be made available to them despite the BUDs and BOCC resolutions.[7]
Based upon the foregoing, we affirm the trial court’s Final Judgment.
Affirmed.

. See Riordan v. Monroe Cnty., 99 So.3d 961 (Fla. 3d DCA 2012); Collins v. Monroe Cnty., 76 So.3d 370 (Fla. 3d DCA 2011); Collins v. Monroe Cnty., 999 So.2d 709, 714 n. 9 (Fla. 3d DCA 2008); and State v. Collins, 940 So.2d 437 (Fla. 3d DCA 2006).

. The named appellants are Thomas F. Collins and Patricia Collins, Donald Davis, Aurelia Del Valle and Maria Del Valle, Hill Family Investments, Inc., Richard J. Johnson and Joann C. Johnson, Robert A. Lomrance, Joseph Magrini and Elda S. Magrini, Keith P. Radenhausen; Gregory Riordan, Trustee; Hubert Tost and Marilyn Tost, and Samuel I. Burstyn, P.A. (collectively “Landowners”).

. Of the original set of 11 Landowners, the Collins and the Magrinis each obtained building permits for their respective properties. The Magrini property was sold in 2007. See Collins v. Monroe Cnty., 999 So.2d 709, 714 n. 9 (Fla. 3d DCA 2008). The trial court subsequently granted summary judgment against the Collins and the Magrinis and we affirmed the summary judgment in Collins v. Monroe County, 76 So.3d 370 (Fla. 3d DCA 2011). Summary judgment was also entered against Gregory Riordan, Trustee, and we also affirmed in Riordan v. Monroe County, 99 So.3d 961 (Fla. 3d DCA 2012).

. Despite being titled the Monroe County Year 2010 Comprehensive Plan, the 2010 Plan in actuality took effect in 1996.

. The Collins, Magrinis, and Trustee Riordan, were not involved in the trial since their claims had been resolved by summary judgment beforehand.

. Mrs. Del Valle testified at trial that her contract for the purchase of her property contained an addendum which advised them "that the capacity of the infrastructure, such as the level of the road surface and solid waste, may affect the ability of a building permit for vacant lots at some point in the future.” She further testified that they were "advised [they] should seek legal counsel or consult with the Monroe County Planning and Zoning Department on [their] own discretion.” Although she testified that she and Mr. Del Valle retained counsel, based upon her testimony, it appears that their counsel’s representation was limited to assisting them with the closing of the purchase of their property.

. Galleon Bay involved a landowner who expended hundreds of thousands of dollars in an effort to develop its property and in pursuit of its reasonable investment-backed expectations. Id. at 567. Here, the evidence presented at trial showed relatively passive landowners who took minimal action towards the improvement or development of their respective properties and invested little into the development other than their initial purchase costs. Under these facts, the trial court correctly found in favor of the appellees under the reasonable investment-backed expectation prong of Penn Central.