SUAREZ, J.
Gordon Beyer and Molly Beyer (“the Beyers”) seek to reverse a final summary judgment in favor of the City of Marathon and third-party defendant, the State of Florida, on the appellants’ inverse condemnation suit. We affirm.
In 1970, the Beyers purchased the undeveloped nine-acre offshore island, Bamboo Key. At the time of purchase, the property was undeveloped and under the jurisdiction of Monroe County. It was zoned for General Use, which permitted one single-family home per acre. In 1986, new zoning regulations took effect that altered Bamboo Key’s zoning status from General Use to Conservation Offshore Island (OS) and placed it in the Future Land Use category,[1] which limited density to one dwelling unit per ten acres. In 1996, the Monroe County Compreherisive Plan (“2010 Plan”) was adopted, identifying Bamboo Key as a bird rookery and prohibiting any development.[2],[3] The Beyers submitted their first beneficial use (“BUD”)[4] *565 application in 1997. The County had taken no action on the application by 1999 when the City of Marathon was incorporated and assumed jurisdiction of Bamboo Key. The City ordered the Beyers to submit a new application and fee, which they did in 2002. A BUD hearing was ultimately heard before a special master on July 13, 2005. The special master issued an order recommending denial. The special master determined the only allowable use of the property was camping. He concluded, however, that assignment of sixteen points under the City’s Residential Rate of Growth Ordinance (“ROGO”) constituted reasonable economic use of the property and held a value of $150,000.00. The special master further concluded that the landowners’ inactivity over thirty years despite increasingly strict land use regulations restricted any reasonable expectation that the property would hold a' greater development value; ■ Therefore, the ROGO points and recreational value reasonably met investment-based expectations. Based on his recommendation, the City passed a resolution denying the petition later that month.
The Beyers sued the City for inverse condemnation based on a per se, facial taking. Their complaint asserted that they have been deprived of all or substantially all reasonable economic use of the property by virtue of the changes in land use regulations over the years. An earlier appeal was taken after the trial court entered summary judgment in favor of the appellees based on the statute of limitations. Beyer, et al. v. City of Marathon, 37 So.3d 932 (Fla. 3d DCA 2010). This Court reversed the order and remanded the cause for further proceedings upon determining the statute of limitations did not bar the Beyers’ claim for an as-applied, rather than a facial, taking. On remand, the trial court again entered summary-judgment in favor Of the appellees. It concluded that the Beyers had failed to produce any evidence that the change in land úse regulations had substantially deprived them of reasonable economic usé of the property or frustrated a reasonable investment-backed expectation held at the time of purchase. The trial court also concluded the doctrine of laches barred the Beyers’ claim, as their thirty-year delay in pursuing any development had prejudiced the appellees. The Beyers appeal.
Our standard of review on a grant of summary judgment is de novo. Volusia Cnty. v. Aberdeen at Ormond Beach, L.P., 760 So.2d 126, 130 (Fla.2000). The existence or extent of the Beyers’ investment-backed expectations to develop Bamboo Key is a fact-intensive question. The record before us is devoid of fact evidence that the Beyers had any specific plan for developing the property, dating from the time of purchase in 1970, up to the present.[5] “If the Landowners did not start development prior to the, enactment of -these land- regulations, they acted at *566 their own peril in relying on the absence of zoning ordinances.... A subjective expectation that land can be developed is no more than an expectancy- and does not translate into a vested right to develop the property.” Monroe Cnty. v. Ambrose, 866 So.2d 707, 711 (Fla. 3d DCA 2003) (internal citations omitted); see Lucas v. So. Carolina Coastal Council, 505 U.S. 1003, 1019 n. 8, 112 S.Ct. 2886, 120 L,Ed.2d 798; see generally Penn Cent. Transp. v. City of New York, 438 U.S. 104, 98 S.Ct. 2646, 57 L.Ed.2d 631 (1978) (considering the economic impact of the regulation on the claimant, the extent to which the regulation has interfered with distinct investment-backed expectations, and the character of the government action; diminution in the property value alone cannot establish a taking); Shands v. City of Marathon, 999 So.2d 718, 724 (Fla. 3d DCA 2008); see also Galleon Bay Corp. v. Bd. of Cnty. Comm’rs of Monroe Cnty., 105 So.3d 555 (Fla. 3d DCA 2012) (finding that the trial court erred in its determination that Galleon had not been deprived of all or substantially all of the economically viable use of its property, where the property owner, over many years, proceeded with numerous efforts to improve and develop the land). To be sure, the record is devoid of evidence that — not only at the time of purchase but in all the intervening years— the Beyers pursued any plans to improve or develop the property. They provided no evidence of investment-backed expectations at or since the time the property was purchased, nor demonstrated any reasonable expectation of selling the property for development. We therefore affirm the trial court’s conclusion on this issue.
The City and State argue that laches apply because it is now impossible to recreate the circumstances' and conditions present on Bamboo Key back in 1996, when the land use designation changed. As there have been no significant changes to the Key since the Beyers bought it in 1970,- however, that argument is unpersuasive. Furthermore, as we concluded in Beyer, 37 So.3d at 934,
“[o]rdinarily, before a takings claim becomes ripe, a property owner is required to follow ‘reasonable and necessary’ steps to permit the land use authority to exercise its discretion in considering development plans, ‘including the opportunity to grant any variances or waivers allowed by law.’” Collins [v. Monroe County 1 999 So.2d [709] at 716 [(Fla. 3d DCA 2008) ] (quoting Palazzolo v. Rhode Island, 533 U.S. 606, 620-21, 121 S.Ct. 2448, 150 L.Ed.2d 592 (2001)). In the case before us, the Beyers, in close proximity to the time the 1996 Plan was enacted, sought the quasi-judicial relief available to them via the BUD process. Based upon the information in the record, it appears that any delay in the processing of the Beyers’ BUD applications was not caused by any action or inaction on their part. It would be patently unfair, if not absurd, to allow the county, and later the City, to delay the timely processing of the BUD application, provide a determination after the expiration of the purported limitations period, and then claim the expiration of the limitations period as a defense. ■
Beyer, 37 So.3d at 935. The same conclusion applies to a laches defense.
We nevertheless affirm the summary judgment because these facts present a claim for an “as-applied” taking and not a per se, facial taking.[6] The City *567 assigned the Beyers sixteen points under its Residential Rate of Growth Ordinance, having a value of .$150,000. The award of ROGO points, coupled with the current recreational uses allowed on the property, reasonably meets the Beyers’ economic expectations under these facts. Thus, under an “as applied” takings analysis, the Bey-ers were not deprived of all economically beneficial use of the property. See Collins, 999 So.2d at 716.
Affirmed.

. In 1985, the Legislature enacted -a State Comprehensive Plan, effective July 1, 1985, ch. 85-57, 1985 Fla.. Laws 295 (codified as amended at Fla. Stat. ch. 187 (2000)), In 1986, the State Comprehensive Plan was adopted by Monroe County. This effectively altered the zoning classification of Bamboo Key from General Use (GU) to Conservation-Offshore Island (OS), which reduced allowable development to 1 unit per 10 acres. The purpose of the OS district is to establish areas . that are not connected to U.S.-l as protected areas, while permitting low-intensity residential uses and campground spaces in upland areas that can be served by cisterns, generators and other self-contained facilities. See Monroe County, Fla., Code § 9.5-212 (1986); § 54 (1987).

. See Marathon, Fla., ' Code § 103.07(B) (2009) (providing that the Conservation-Offshore Island (C-OI) Zoning District shall be used for properties which have natural limitations to development because of their sensitive environmental character).

. The Beyers could camp on the property, but not build. See Marathon, Fla., Ordinance 2004-15 (Jul. 13, 2004); State' of Florida, Dep’t of Cmty. Affairs Final Order DCA04OR-189 (2004) (finding Ordinance .2004 — 15 extending development moratorium on certain high quality natural areas to be consistent with §§ 380.05(6), 380.0552(9), Fla. Stat. (2003) (Florida Keys Area of Critical State Concern)),

. The beneficial use determination is a process by which the City evaluates the allegation that no beneficial úse' remains and can provide relief from the regulations by granting *565 additional development potential, providing just compensation or if it so determines, extending a purchase offer for the property. However, this article also intends that such relief not increase the potential for damages to health, safety, or welfare of future users of the property or neighbors that might reasonably be anticipated if the landowner were permitted to build. Marathon, Fla. Code art. 18 ("Beneficial Use Determinations”), § 102.99(B) (2008).

. The, Beyers submitted a dock permit application in 2000, well after their BUD' application was filed. The untimely attempt to show "investment-backed expectations” to develop the property by filing a dock application does not influence the as-ápplíed taking analysis, As the City points out, a dock is an appurtenant structure, and there is no development on Bamboo Key, planned or otherwise,-to be served by a dock.

. We affirm, applying the “tipsy coachman” doctrine, which permits a reviewing court to affirm a decision from a lower tribunal that reaches the right result for the wrong reasons so long as "there is any basis which would support the judgment in the record.” Dade *567 County Sch. Bd. v. Radio Station WQBA, 731 So.2d 638, 644-45 (Fla.1999).